Section 245 of the Immigration and Nationality Act allows somebody who is in the United States if they have a way to immigrate to adjust their status before the Attorney General instead of going out to the consulates in order to immigrate. Section – now, there's two ways that this can occur. Some people will adjust status in a very informal administrative procedure in front of a clerk, in front of the district director, and some people will apply for this adjustment of status before the Attorney General, in other words, in front of the immigration court. Whether or not somebody ends up in the immigration court or is adjusting their status in this type of situation before the INS or the BCIS, as they call it now, it's really pretty random. And in this particular case, there's no real criminal issue or any other issue. She may have just as easily been before the district director as before the immigration court. So, counsel, let me ask you a question. The first issue, as I see it, is you say – your briefing to us all says that there was absolutely no discretion to grant a continuance or not. As a matter of fact, you make the amazing statement, at least from a judge's standpoint, asking a continuance of the court was simply a courtesy to it. I didn't even have to ask for it. It was just a courtesy. Should I treat that as hyperbole, or are you really saying this is such a bad abuse of discretion that it should have been granted, or do you want to stand on the concept that there was absolutely no discretion, and if I'm nice, I'll give them the courtesy of asking them for a continuance, but I don't even have to do that? I didn't mean disrespect to that court. I'm not talking about disrespect. I'm talking about the words you say. You say that it's only a courtesy to them, that there is absolutely no discretion that is mandatory that they give you a continuance. Is that really your position, or is that just hyperbole? That's what I'm asking. It is hyperbole, Your Honor. And you're really – what you're telling us is you're really arguing that it was just a real bad abuse of discretion. No, I think the court had – Abuse of discretion? No, it wasn't abuse of discretion, but the court had before it a properly completed everything before it that the law required. I didn't ask you that question. I asked you – the question I asked you was what your argument to us is. Are you saying – it looks to me like you're saying that the only issue you raised before us is that they had a mandatory duty to grant it to you, and even asking was just nice to them, to ask them. That's what you're arguing to us. I'm trying to get – are you really trying to say it was just an abuse of discretion? It wasn't an abuse of discretion. If the court had before it the opportunity to adjudicate this adjustment of status, or because some formality of origin I still don't know wanted to have this other document from the Department of Homeland Security or INS before it did that, well, then that's fine. We can play along, but at least the Petitioner should have had this opportunity to present that later on. At some point, the INA, the Immigration Nationality Act, gives her the right to apply for this benefit before the immigration court, and the action was, in result, no continuance, was to say that she was not entitled to that opportunity. Let me ask you another question. Before – probably six or eight months before, I forget the exact timing, before this case was ever decided by the BIA, the BIA en banc has said, we know what we used to say, but we're not saying it anymore. If somebody asks to reopen in this kind of situation, that should be granted if a BIA had ruled that ahead of time. As far as I can tell from the record, the BIA was never asked to reopen on that basis, nor was it specifically brought to the attention of the deciding people in the BIA that this case had come down and should make a C change in the approach to these cases. Am I corrected that that was never done? The – no motion to reopen was ever filed, but the case Villardo-Pacheco Was that because 93 days had passed? You just decided not to file it? The – if I may explain. The time hadn't passed since the BIA ruled. It hadn't ruled yet. My question to you is, did you bring any of that to their – did you even bring the case to the BIA's attention? No. A motion was not filed to reopen. It would be a motion to reconsider. Did you even file within this case, I'm saying, and say, look, since you guys have now ruled this way in Pacheco-Villardo, you should at least consider that when you're trying to decide whether there was an abuse of discretion here, because it sure looks like it because you even said the person should have a chance. Did you even raise it? That's what I'm asking. It could be yes or no, but I just want to know. Okay. No, it was not raised. The – Villardo-Pacheco occurred after the briefing before the BIA, but before the decision. Yes. For Villardo-Pacheco, the reading of that case and the way it is, is if while all this stuff is going on, you happen to marry and you file with all the supporting documents the material that would be required for an adjustment of status, then we will reopen the case and I assume have it before them in a indefinite continuance pending the approval of the I-130. Sure sounds that way. It sounds like, but I had everything in there already. Excuse me? Everything was in the record before the BIA at that point. There was nothing that I could attach to the motion. My question is, but you didn't say to whoever's going to – you know, we are really, for example, in the Ninth Circuit, we are brilliant. We know every case that we've ever decided. Each one of us knows all the cases that are decided in the Ninth Circuit, but sometimes it helps to mention it so it comes to mind and that wasn't done, your idea. No, it was not done. The principles, the nature of this appeal before the BIA is exactly the issue in Valerio Pacheco and they are simply not consistent. Do you – let me ask you your opinion of this. If a lawyer says, you know, there was a failure to grant me a continuance and that was an abuse of discretion and doesn't cite cases that are – make that almost a slam dunk, does that excuse the agency from considering the case anyway? The – no. In your view, in your view, I mean, should the agency have considered Valerio Pacheco anyhow? Yes, they should have, but this case is really a reversal of Valerio Pacheco. The same issues were there, the same reasoning, the same everything and Valerio Pacheco is present in this case. Here's somebody waiting for the approval. Right. Well, it was a reopening case, though, and I'm just saying – but I think what you – are you telling me that what you think, then, is that having not raised the case, still in all, they should have realized that the whole gestalt had changed and they should have approached this motion, this question of continuance from that angle. Is that your point? The proper thing for me to have done would have been to notify them with an amended brief or something before them. There's nothing to reopen at this point. Sure. There's nothing to reopen. Probably would have been the right thing to do. They still have a right to reverse Valerio Pacheco if they're saying, well, this case is different. And I don't know how it's different. I don't see any difference. Okay. But, you know, they may feel that way. I understand. Okay. Okay. And it's – and again, applications for adjustment of status by people exactly like the petitioner are filed with the district director and they sit there for years and years. No approved dialogue. Well, that's really the problem, isn't it? That is a problem. That is the problem. Is that the problem here? That is the application for the visa before the district director could have sat forever? Exactly. And you eventually had to get a mandamus to get it? Exactly. It would have sat there. And when it sits before the district director, the people get employment authorization. Sometimes they get travel permits. They get all these luxuries. But if it's before the immigration judge, for some reason they don't have any of that. They don't have the privilege of being able to wait. And there's absolutely no difference. People like my client. Well, isn't your client's problem that she was already in removal proceedings when she got married? Or she had already actually been removed in absentia? Well, yeah, but that was reopened. I don't think that should be an issue because, you know, there was an issue there. She had a prior abuse of marriage and then they went and got married, but they thought that there wasn't anything there. Yeah, right, right, right. They thought they were divorced and all that. Yeah, right, right, right. But was this already a reopening? This case had been reopened already, yes. But there's no limits on reopens for when she didn't get notice. You know, I don't see an issue with that. Right. No, I'm not suggesting there's a problem there. I'm just, in reading the record, it looks as if the I.J. thought that she was going to be fine. And she actually wasn't. Whose responsibility was it to take into account that it was going to take that long to get a visa? I will now defend myself. This occurred right at the time when the approval process for the I-130s went from three months to three years. It used to take only three months and then also went to three years. You know, now this would be handled differently. You know, unfortunately now, the day the client comes in, you've got to file a mandamus action at the same time because it can take a year to even get the mandamus order out to get the thing done. But at this time, it was kind of a transition period, and that was part of what the problem is. And that's one reason why they reversed Matter of Arthur and Valerio Pacheco, because the situation had changed. It was going to take these long times, and the BIA was going to get into trouble. Okay. Let me ask you one more question. Is your client eligible for a cancellation of deportation? She, yes, she was at that time. Did she apply? I can't tell you the truth, Your Honor. I don't know if she had the 10 years at this point. She may have been. As a matter of curiosity, where is your client? Well, living with her husband and five kids. She's still here? She's still here. All right. She was not deported? She was not deported, no. All right. Thank you. Okay. The – and there's also this – Okay. Your time has expired. Okay. Thank you. Thank you. May it please the Court. My name is Luis Perez. I represent the Respondent in this case, the Attorney General John Ashcroft. Your Honors, if the Court doesn't have any immediate questions, I will just proceed with my oral argument. Well, I think we have a lot of questions, but you proceed with your argument. Sure. Your Honor, the issues raised by Ms. Hernandez-Garayano in her opening brief have been mostly addressed by this Court in Dillman v. INS. First, I would like to point to the statute regulating this case. Section 245A of the INA basically gives the Attorney General discretion to grant a judgment of status in those cases where the alien has an immediately available visa. That statute also allows the Attorney General to issue regulations in accordance to his authority. The Attorney General issued a regulation, HCFR Section 204.1E1. That regulation basically – the Attorney General delegates his authority to adjudicate visas to the former INS, now Department of Homeland Security. In Dillman v. INS, this Court acknowledged that delegation and upheld that delegation, basically saying that an alien is not wrong by the fact that the INS, and not the Executive Office of Immigration Review, is adjudicating these visas. Now, this is relevant with respect to Ms. Hernandez-Garayano's argument that the delegation, that there is no regulation authorizing that delegation. Well, we have a right hand and a left hand that don't seem to be operating together, don't we here? We have the district director who's issuing these visas, and we have the INS that is holding proceedings to remove people and adjustment of status proceedings. And was she entitled to, in your view, she had married this person, she had five citizen children, wasn't she entitled to an adjustment of status? Your Honor, that issue is already moved because she was granted the visa eventually. So she's eligible. So the question is – Well, then what does she do now? Well, she cannot do anything right now with respect to that. But the question is – But she has a visa. She's entitled to adjustment of status, and yet she's here. She can leave the country, stay there two years. Leave her five children here. No, Your Honor, I'm just basically answering the question. That is what she can do. But that is not really the issue, because the issue is whether the immigration judge – Well, let me ask you a different question. I think you're right. I don't think that is the issue. If our laws are draconian, they're draconian. That's another question. My question to you, though, is this case, when the IJ denied the continuance,  And that's how it was. And so he denied the continuance. And you can think that was right or wrong at the time. Cases appeal to the BIA. Well, it's up to the BIA. The BIA takes that issue on bonk and really doesn't exactly, but sort of knocks out Madara Bartha and says, Now, from this point forward, at least, somebody in her situation has a much better shot at reopening even. Reopening and granting a continuance. I mean, that's the only thing that would make any sense. Unless they were just sort of writing paper to sound good. But I have to guess that that's what they're saying. My question to you is, that case comes down before this case is decided. And they had before them a claim that the IJ, as we know now, abused his discretion because he didn't apply these rules. Now, how does the BIA, in considering that abuse of discretion question, avoid looking at Velarde Pacheco, even if he doesn't mention it? It's a very long question. It's a big statement with a question mark on you. What I'm really saying is, if they considered Velarde Pacheco, it seems to me they would almost have to say the IJ abused his discretion. We know that now. Your Honor, Velarde Pacheco, what basically does is that it creates an opportunity for those. It doesn't really overrule Madara Bartha. No, not really. It just creates an opportunity for those aliens who can establish that their marriage is bona fide, bona fide. But Velarde, remember, this is in the motion to reopen context. I know that. So the alien has to establish, has to make that proffer. A motion to reopen is a discretionary relief. So, and also, Ms. Hernandez-Arayano had the burden to exalt her administrative remedies with respect to that issue. Well, suppose, suppose, I mean, her lawyer is really on top of this thing, and that case comes down, and he walks in and he goes to the BIA. He doesn't have to reopen. He says, look, you've got my claim that it's abuse of discretion here. Look what you guys have just done in Velarde Pacheco. Clearly, if the IJ had known that, he should have exercised his discretion to grant a continuity. That's all. Or he should have at least taken evidence from which we could demonstrate it. Okay. Well, the BIA already knows about Velarde Pacheco. Why didn't they just send it back to the IJ? Because Ms. Hernandez-Arayano did not request that before the board. True. First. Second, Madara Bartha is still good law. True. The immigration judge's decision is in accordance to Madara Bartha. So because the immigration judge's decision is in accordance to Madara Bartha, the immigration judge did not abuse his discretion. Okay. I understand. And also, in Dillman, this Court upheld Madara Bartha. Yes. And said that there are no constitutional problems with Madara Bartha. With respect to Andrea, I was going to bring up the fact that in her opening brief, Ms. Hernandez-Arayano does not really question whether the immigration judge abuses discretion or not. The way the government read the opening brief was that she was basically saying that the immigration judge was legally compelled to do that. And basically, our brief is pretty clear as to why, pursuant to Madara Bartha, he was not compelled. But since the argument has been explained better now, we will also contend that, pursuant to Madara Bartha, he did not abuse his discretion in not granting the continuance. Remember that in Dillman also, this Court held that the Board of Immigration Appeals and the immigration judge does not abuse his discretion when he presumes that an alien is not eligible for adjustment of status on the sole fact that the alien has an unadjudicated visa petition. Especially in cases such as Ms. Hernandez-Arayano's case where she entered into a marriage after the commencement of removal proceedings. But there's no evidence anywhere that this is a fraudulent marriage. And this is a woman who has no criminal history. She – if the case had been applied, Larde, she would have been granted adjustment. I notice there's a memo sent by the INS General Counsel, May 2001, which states, the INS may join in motions to reopen or revamp the IJF for consideration of adjustment of status under 245 if such adjustment was not available to the respondent at the former hearing. The alien is statutorily eligible for adjustment of status and the respondent merits a favorable exercise of discretion. Why shouldn't your office consider? She can still file that motion to reopen because remember that when – if – but again, that is the discretion of the INS. If the INS joins the motion, then the time – What is the reason why the INS is – It has never been requested, Your Honor. It has never been requested by the INS. Are you saying if it were requested, you would consider it? I cannot speak for the INS because I do not represent the INS. I represent the Attorney General. But the policy is clear. You know, this is not an inflexible agency who would just deny that. I'm just saying that responding to the issues that have been raised in the opening brief, the immigration judge did not abuse his discretion. Right, right. Yeah, but the immigration judge told her not to worry. You're in good shape. Not knowing it would take 800 days to get her visa determined. Was the notice that said it's going to take 800 days in the record? Since April. Yes. Ms. Hernandez-Arellano knew that it was going to take 800 days. And that was the – and didn't the judge know that, too?  Yeah. Oh, and that's the problem. Okay. In fact, it appears from the record that during the August hearing, the Ms. Hernandez-Arellano was agreed to the November hearing, and everyone was sort of surprised that the INS had not been able to adjudicate that visa petition. But it was not clear from the record, at least before the I.J., that it was going to take 825 days. Remember, what the I.J. says is, I am not going to grant your motion because I don't know. I thought when she applied for the visa that she got a notice that it was going to take 800 days. The notice specifically says that the INS normally takes 825 days to adjudicate visa petition, this type of visa petition, yes, Your Honor. It's in the record. The notice was – it's dated May of 2001. If you want, I can give you the exact date of the administrative record. Was that before the judge? I don't know if it was before the judge, but everyone – Why did everyone think that she was going to be all right if she just got – I don't know, Your Honor. That is what appears from the conversation of the record. But, yes, the visa petition specifically says – I mean, it seems to me that she was basically misled when she was told that everything would be all right, that this was going to go through. And yet, in fact, it was taking the district director 800 days. Is she supposed to – Page 111 of the administrative record. Yes. Now, it takes normally 825 days because in cases like Ms. Hernandez-Sarayano, because she entered her marriage after the commencement of removal proceedings, more evidence has to be taken. Now, I don't know what were the representations the INS made to – No, I've read the record. But the immigration judge did not mislead Ms. Hernandez-Sarayano. The immigration judge – the only concern the immigration judge had was that he didn't know how much time it was going to take. And he even asked Mr. – the attorney a continuous to when, to four months, five months, because of the uncertainty. Okay. You've more than used your time. Thank you. Thank you. Do you have – is there time left for the – No. No. You're over. All right. The case just argued is submitted for decision. We'll hear the last case for argument, which is the Clinic of Santa Maria v. Commissioner of Internal Revenue. Thank you.
judges: Schroeder, Dw Nelson, Fernandez